ARTHUR W. TUVERSON, ESQ.
Nevada State Bar No. 005156
MELANIE L. THOMAS, ESQ.
Nevada State Bar No. 012576
LAW OFFICES OF ARTHUR W. TUVERSON
A Limited Liability Partnership
Including Professional Corporations
7201 West Lake Mead Boulevard, Suite 570
Las Vegas, Nevada 89128
Telephone: (702) 631-7855
Facsimile: (702) 631-5777
Mthomas@awtlawoffice.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

****

| | |
|---|---|
| DONALD AMARELD, JR., Individually,<br><br>  Plaintiff,<br><br>vs.<br><br>TROPICANA LAS VEGAS HOTEL AND RESORT, INC. aka TROPICANA HOTEL AND CASINO, a Nevada Domestic Corporation; TROPICANA LAS VEGAS INC., a Nevada Corporation; ARMENCO HOLDINGS AND REGAL ENTERTAINMENT GROUP, LLC a Foreign Limited Liability Company; DOES 1-20 inclusive; and, ROES 1 – 20 inclusive,<br><br>  Defendants. | CASE NO.:   2:13-00758-APG-NJK<br><br>**PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT** |
| TROPICANA LAS VEGAS INC., a Nevada Corporation,<br><br>  Third Party Plaintiff,<br><br>vs.<br><br>THOR CONSTRUCTION, INC., TURNEY DEVELOPMENT, LLC, DOES 1 through 10, inclusive and ROE ENTITIES 1 through 10, inclusive,<br><br>  Third Party Defendants. | |

1  Pursuant to Fed. R. Civ. P. 16 and 15(a), Plaintiff, DONALD AMARELD, J.R. ("Plaintiff"),
2  by and through his attorneys, the LAW OFFICE OF ARTHUR W. TUVERSON, LLP, hereby files
3  his *Motion to File an Amended Complaint.* Discovery is scheduled to close on April 5, 2014.
4  Because less than two (2) months remain in discovery, Plaintiff respectfully requests the Court grant
5  its Motion to Amend and enter an order (1) reopening the deadline to amend pleadings to allow
6  Plaintiff to add a cause of action for Negligence Per Se and Gross Negligence, and a claim of
7  punitive damages against Tropicana; and (2) any further relief as the Court deems just and proper.

8  DATED: February 13, 2014          LAW OFFICES OF ARTHUR W. TUVERSON

BY:   /s/ Melanie L. Thomas
ARTHUR W. TUVERSON, ESQ.
Nevada State Bar No. 005156
MELANIE L. THOMAS, ESQ.
Nevada State Bar No. 012576
7201 W. Lake Mead Blvd., Suite 570
Las Vegas, Nevada 89128
(702) 631-7855
*Attorneys for Plaintiff*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This case relates Plaintiff's slip and fall accident on Tropicana's premises in Las Vegas, Nevada on July 21, 2011. A narrative of the surrounding events is set forth in detail in the contemporaneously filed *Motion to Compel* (#48). The pertinent information for purposes of this motion is provided again herein.[1]

Plaintiff filed his Complaint against Tropicana on May 1, 2013. Since discovery began, Tropicana has engaged in multiple attempts to delay the litigation, run the deadlines for various discovery cut-offs; overall precluding Plaintiff from gathering information related to, and necessary for prosecuting his claims. Tropicana has turned a slip and fall injury into a construction defect case, by filing third-party complaints against contractors and attempting to shift the burden for the duty it owed to Plaintiff to use due care in rendering its premises reasonably safe. Tropicana had actual knowledge of, and more than ample opportunity to correct, the dangerous condition on its pool deck. Tropicana chose to keep its pool deck open for use by its guests despite actual knowledge of multiple severe injuries sustained and likely to be sustained by its guests.

## II.  LEGAL ARGUMENT

Plaintiff files his Motion pursuant to Fed. R. Civ. P. 16 and 15(a). Plaintiff has been diligent, and the failure to amend his Complaint prior to the September 3, 2013 deadline, and was not due to any undue delay or bad faith attributable to him. At the time the deadline to amend expired, Plaintiff was not in possession of information forming the basis for seeking this Court's intervention. Plaintiff has diligently sought and been denied access to information supporting the requested amendments. Plaintiff diligently investigated and discovered information from other sources when Tropicana refused to produce the same. Plaintiff does not seek to add parties, or causes of action against Tropicana that would result in unfair surprise. Rather, Tropicana's own actions of concealment, once discovered, support the amendments sought. Plaintiff's proposed Amended

---

[1] To this extent this Motion overlaps with Plaintiff's *Motion to Compel* (#48), only the relevant pages of exhibits cited therein are attached hereto. The exhibits maintain the same correlating numbers, but may be provided in abbreviated form.

1  Complaint is attached hereto as "Exhibit 12," and merely seeks to add additional negligence based

2  causes of action against Tropicana only.

### A. PLAINTIFF SEEKS LEAVE TO AMEND HIS COMPLAINT TO ADD CAUSES OF ACTION FOR GROSS NEGLIGENCE, NEGLIGENCE *PER SE*, AND A CLAIM FOR PUNITIVE DAMAGES

The District Court provided the following regarding amendments to pleadings once the deadline has expired:

> Where a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16, not the more liberal standard under Rule 15(a).[2]  Unlike Rule 15(a)'s relaxed amendment policy, which focuses on undue delay and prejudice to the other party, Rule 16(b)'s "good cause" standard centers on the moving party's diligence.[3]  A "district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.,* (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 amendment)).  "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.*  If the moving party is able to satisfy the good cause standard under Rule 16, then the Court will examine whether the amendment is proper under Rule 15(a). *Id.* at 607-08.

*Fremont Inv. & Loan v. Singleton,* 2007 U.S. Dist. LEXIS 30234 at \*\*14-15, 2007 WL 1213677 (D. Nev. Apr. 24, 2007).  Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires."  This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

The Ninth Circuit has previously noted that the following factors should be considered in deciding whether to grant leave to amend:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave should, as the rules require, be "freely given."

---

[2] *Amerisource Bergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946, 952 (9th Cir. 2006); *see also Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607-08 (9th Cir. 1992) (noting once a district court files a pretrial scheduling order under Federal Rule of Civil Procedure 16 establishing a timetable for amending pleadings, that rule's standards control).

[3] *Johnson,* 975 F.2d at 609.

LAW OFFICES OF ARTHUR W. TUVERSON
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
7201 WEST LAKE MEAD BOULEVARD, SUITE 570
LAS VEGAS, NEVADA 89128
TELEPHONE (702) 631-7855

1 *Id*. at 1052; see also *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) (holding that the four factors used to determine the propriety of a motion for leave to amend are "bad faith, undue delay, prejudice to the opposing party, and futility of amendment."). "Not all of the factors merit equal weight." *Eminence Capital, LLC*, 316 F.3d at 1051. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id*. "Prejudice is the 'touchstone of the inquiry under rule 15(a).'" *Id*.

Tropicana's bad faith and undue delay have formed the basis for Plaintiff's need to amend the pleadings. For the reasons set forth in detail below (and in Plaintiff's motions to compel (#48) and for sanctions (#49) filed contemporaneously with this Court), Plaintiff will be prejudiced and denied full and complete relief if he is not permitted to amend his Complaint. The amendments are more than supported by the undisputed facts and evidence. On September 25, 2013, Plaintiff served the discovery that substantiates the basis for the relief sought herein, and is set forth below:

> **INTERROGATORY NO. 20:** Within the five years prior to the date of this incident to the present date, state whether the Defendant received or became aware of any complaints regarding the exterior surface area surrounding the pool that was used by the Plaintiff in navigating the premises of the Defendant on the date of this incident, and, if so, state: a. The date of the complaint; b. The nature of the situation complained of; and c. The names, addresses, and occupations of the persons so complaining.
>
> **RESPONSE TO NO. 20:** Tropicana objects to this interrogatory on the grounds it is overbroad and burdensome as to time, scope and location. Tropicana further objects on the grounds it is vague and ambiguous. Tropicana further objects on the grounds it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the objections, but in light of and subject to them, see prior incident reports **[after the pool remodel project was completed in 2010]** ~~after Turney Development's 2011 resurfacing of the pool deck~~, produced with Tropicana's responses to plaintiff's first requests to produce documents.[4]
>
> **REQUEST FOR PRODUCTION NO. 1:** Any and all documents utilized by you in formulating your Answers to the Interrogatories served concurrently with this Request for Production.
>
> **RESPONSE TO NO. 1:** Tropicana Las Vegas, Inc. (hereinafter "Tropicana") objects to this request on the grounds it is overbroad and burdensome. Notwithstanding the objection, but in light of and subject to it, see THOR000001-THOR000555,

---

[4] Exhibit 3, 000026:1-16; 000058:12-27. (Information in **bold** was provided in Tropicana's supplemental responses sent via U.S. Mail on November 25th, and replaced the information with a ~~strike~~ through it that was provided on November 13, 2013).

TROP00001-TROP00039, previously produced. Additionally, see the following documents produced herewith on CD Rom:

1) Utility Porter (EVS) Task 22: Wash pool deck; 2) Pool Team Member Orientation; 3) EVS Shift Manager Tasks; 4) Housekeeping EVS Supervisor Tasks; 5) EVS Public Area Cleaner TLV Tasks; 6) Housekeeping EVS Assistant Manager TLV Tasks; 7) Update Employee Basic Data-Joanna Grace; 8) Update Employee Basic Data-Stacie Matsunaga; 9) Tropicana Security Daily Activity Report for July 21, 2013; 10) 2011-03-31 Incident Report; 11) 2011-04-16 Incident Report; 12) 2011-04-18 Incident Report; 13) 2011-04-27 Incident Report; 14) 2011-06-18 Incident Report; and 15) 2011-06-24 Incident Report.

**16) [---]; 17) [---]; 18) [---]; 19) 2010-06-10 Incident Report; 20) 2010-07-03 Incident Report; 21) 2010-07-05 Incident Report; 22) 2010-07-25 Incident Report; 23) 2010-07-27 Incident Report (Note: the medical records of the minor injured in this incident that were part of the incident report file are not being produced to protect the minor's privacy interests); 24) 2010-07-30 Incident Report; 25) 2010-08-05 Incident Report; and 26) 2010-08-09 Incident Report.[5]**

On November 15, 2013, immediately following a telephonic meet and confer with Tropicana counsel, Ms. Thomas sent correspondence summarizing and confirming the matters discussed, where she referenced Tropicana's response to Interrogatory No. 25 which sought facts related to any contention that a third party was responsible for the pool deck to support the basis of her request for supplementation. (Exhibit 1, 000002-000005).

**RESPONSE TO NO. 25(b):** If plaintiff is contending the pool deck is slippery or more slippery than any applicable standard of care, Turney installed a slip-resistant coating on the deck a few months before plaintiff's incident. Plaintiff's allegations suggest Turney failed to properly install its slip resistant deck coating. If plaintiff is contending water improperly pooled on the deck where plaintiff's incident occurred, Thor was responsible, when constructing the pool deck, to properly slope the deck for proper drainage.[6]

Plaintiff requested complete incident reports, but Tropicana has failed to provide photographs and/or video despite being requested and previously agreeing to do so. Tropicana has provided some information and documents related to slip and fall incidents, the productions are substantially incomplete as outlined below:

| Date | Photographs | Video | Other |
|---|---|---|---|
| 06/10/10 | 3 | -- | |
| 07/03/10 | 15 | 3 | |
| 07/05/10 | 9 | -- | |

---

[5] Exhibit 3, 000036:1-28; 000069-000070:7-27, 1-11. (Information in **bold** was provided in Tropicana's supplemental responses sent via U.S. Mail on November 25th).

[6] Exhibit 3, 000028-000029:22-28, 1-23

| Date | Photographs | Video | Other |
|---|---|---|---|
| 07/25/10 | 8 | -- | |
| 07/30/10 | 5 | -- | Page 2, Voluntary Statement |
| 08/05/10 | 5 | -- | |
| 04/16/11 | 4 | 1 | |
| 04/18/11 | 7 | -- | |
| 06/18/11 | 5 | 1 | |
| 06/24/11 | 4 | 1 | |
| 07/22/11-present | ALL | ALL | |

Plaintiff first learned of the 2010 incidents after Tropicana served its supplemental responses on November 25, 2013. The deadline to amend had already passed.

Plaintiff's main contention is that the surface of the pool deck had not been properly graded or textured, causing standing water to accumulate on an unreasonably slippery surface that provided the only means of ingress and egress for Tropicana guests to navigate the pool area. This unreasonably dangerous condition caused Plaintiff to fall and suffer severe injuries. Plaintiff learned all of the following information after the deadline to amend pleadings.

### 1. **Tropicana Knew The Pool Deck Was Dangerous Prior To The 2010 Pool Season.**

David Agnello is the PMK for TRE Builders, the Construction Manager for the 2010 Tropicana pool deck project, was deposed in the state court action, on November 25, 2013. Tropicana was aware that the pool deck was dangerously slippery, prior to the pool opening in 2010. Mr. Agnello testified:

> There were some areas of the deck that I had observed, […] that weren't finished or performing in accordance with the samples to get the desired finish. <u>They were a little slick</u>. And I approached Mike Petersen and Ben Mammina and told them both that there were some areas that I didn't feel that were performing.

*Deposition of David Agnello,* 50:17-24 (Exhibit 6). His specific concern about the surface of the deck, was "that someone could slip," and potentially be hurt. *Id.*, 77:21-25. From April 29th to May 5th (2010):

> In general, I observed the pool deck as it was ready for final presentation and noticed a small area over by the bar, […] that was a little slicker than the rest of the pool deck. <u>There was some sort of liquid on the surface, and **it appeared that someone walking had to take a little extra care to not slip**</u>.

*Id.*, at 79-80:23-25, 1-4. Between May 7th and June 4th, 2010, Mr. Agnello was completing closeout tasks, which included evaluating the slip resistance of the deck. He "looked at it, walked around it,

stepped on it, tested it, touched it, asked some questions about it, and just general observations." *Id.,* at 101-102:14-25, 1.

> In accordance with my scope of work, I advised Ben Mammina, who I perceived was the owner, that there was an area that was a problem and I also, parallelly, advised Thor Construction, Mike Petersen, that I thought there was an area that was nonconforming and he needed to look at it.

*Id.,* at 107:15-20.  In an attempt to remedy the problem, Thor prepared a couple four-foot square samples with Shark Grip in areas on the Tropicana pool deck.  *Id.*, at 115:10-11, 15-22.  "We looked at it. We poured water on it. We tested it with shoes and feet and different soles, and then we said, 'It looks good. Let's do it.'"  *Id.,* at 116-117: 23-25, 1, 14-18.  Tropicana's owner representative gave his approval for the entire deck to be resurfaced during this meeting.  *Id.*  The purpose of pouring water on the sample and walking on it was, "[t]o see if under normal use with water on the surface, that the applied Shark Grip would perform," but he could not recall whether the samples were tested by anyone with bare feet.  *Id.*, at 139:18-25.  After the pool was completed and opened in the summer of 2010, Tropicana's owner representative called him and informed him something was wrong that needed to be fixed.  *Id.,* 157:9-17. "There was <u>an area</u> […] where the wearing surface, <u>the color hardener and the Shark Grip, didn't adhere to the concrete</u>, and it was pointed out by Peter after it was opened." [7]  *Id.,* at 125:5-22.  The area was "about a 10x10 area.  […]  Generally, it was directly in front of the snack bar, approximately directly under the bridge, probably 30 feet away or 40 feet away from the pool edge to the north of it."  *Id.,* at 125:5-22.

### 2. **Tropicana Failed To Remedy A Known Danger Despite Actual Knowledge of Multiple Injuries And Intentionally Re-Surfaced The Pool Deck In 2011 With The Same Dangerous Product.**

Despite the fact that Dave Agnello communicated concerns over the slipperiness of the pool deck to Tropicana prior to the 2010 swim season, *eight* injuries occurred that season (including Mr. Gutierrez's, which rendered him a quadriplegic).  The undeniable and unequivocal facts evidencing the dangerous condition were known to Tropicana, and completely disregarded and ignored in 2011, when they hired Turney to re-surface the pool deck using the same materials used in 2010.[8]  At the

---

[7] Peter Magdos—Director of Housekeeping and EVS at Tropicana. *Deposition of Arik Knowles,* 22-24, at 23:20-24 (Exhibit 7).

[8] On November 21, 2013, Tropicana's counsel, asserted before the Hon. Nancy Allf, that the pool deck was

1 end of the 2010 season, 50% of the slip and falls required trips to the hospital, 63% of the victims
2 slipped and fell backwards, and 88% were barefoot when they slipped. [9]  Tropicana's expert, Dr.
3 Solomon criticized the reliability of the January 6, 2012 testing performed on the pool deck (as it now
4 exists), as unreliable.  It was his opinion:

> The deck installed at the time of the [Gutierrez] incident used Shark Grip brand slip-resistant coating.  **This is the same coating used to resurface the deck in 2011. Thus, substantially similar results could have been achieved, even though the deck surface had been replaced**, if all other external conditions could have been controlled.[10]

8 He opined that had the testing been performed in 2011, "**substantially** similar results could have been
9 achieved."  Tropicana chose the "same coating" to re-surface the pool deck in 2011 failing to protect
10 Plaintiff from the "dangers which [were] foreseeable from the arrangement or use."  *Hotels El Rancho,*
11 *Inc. v. Pray,* 64 Nev. 591, 187 P.2d 568 (1947).

12 The 2011 Incident Reports, show that up through and including Plaintiff's slip and fall: 43%
13 of the falls required trips to the hospital, 86% of the victims slipped and fell backwards, and 86%
14 were barefoot when the fell.[11]  Plaintiff agrees with Dr. Solomon that "substantially similar results"
15 were achieved after Tropicana chose to to re-surface the pool deck in 2011 using the "same coating,"
16 knowing and ignoring the high likelihood and foreseeable harm to which they exposed their guests.
17 Dr. Solomon contends:

> A typical slip-and-fall mechanism involves the lead foot slipping forward on heel strike, causing the body to fall backward onto the buttocks and/or hip; therefore, if Plaintiff Gutierrez's right foot had slipped forward, he would have fallen backward onto the deck, regardless of whether or not he was upright or in some degree of bending over at the time of the slip. Plaintiff Gutierrez would most likely have struck his bottom and/or hip upon the deck [.][12]

---

"re-surfaced with the same material as used before," as part of Tropicana's "routine maintenance," at the end of every pool season. See *Affidavit of Melanie L. Thomas, Esq.*, ¶ 12 (Exhibit 13).

[9] This information is obtained from "Exhibit 8," (*Incident Reports* 000001-000024) attached to contemporaneously filed *Motion to Compel* (#48).

[10] Kenneth A. Solomon, Ph.D., P.E., Post Ph.D., *Re: Gutierrez v. Tropicana Hotel and Casino, et al.*: IRSA Code no.: 12.04.SCH.01.AY.I, 20, ¶ 4 (Dr. Solomon is the Chief Scientist at the Institute of Risk & Safety Analyses in Woodland Hills, CA.  He is also Tropicana's expert in this case).

[11] *Supra,* n. 9 at 000025-000042 (Plaintiff's incident report is Exhibit 2 of (#48)).

[12] IRSA Code no.: 12.04.SCH.01.AY.I, 20, ¶ 7

LAW OFFICES OF ARTHUR W. TUVERSON
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
7201 WEST LAKE MEAD BOULEVARD, SUITE 570
LAS VEGAS, NEVADA 89128
TELEPHONE (702) 631-7855

Of the **fifteen** falls that Tropicana disclosed from 2010-Plaintiff's incident, **eleven** (or **73%**) **involved a backward fall, thirteen (or 87%) occurred where guests were walking barefoot on the pool deck.**

### 3. A Jury May Properly Consider Evidence of Tropicana's Knowledge of Prior Accidents Attributable To The Dangerous Condition On The Pool Deck.

On July 19-20th, just two days before Plaintiff was severely injured on the pool deck, Tropicana Pool Managers, Stacie Matsunaga and Jackie Jemilo requested that Turney: "Repair Hazard/Slip Area on Pool Deck by Fitness Center—**Emergency Repair** […] Resurface pool deck **(hazardous slip area)** […]"[13] Turney had an employee on site for fifteen (15) hours each day to complete the repair. Despite facts not fully realized until after November 25, 2013, Tropicana contends that Plaintiff's negligence contributed to his injury:

> Tropicana has had no other slip and fall incidents where plaintiffs incident occurred. Plaintiff knew, or should have known, the deck around the pool was wet and failed to use due care. The incident also occurred near a deck drain, where plaintiff knew or should have known water is likely to accumulate.

(Exhibit 3, 000028:14-21). Plaintiff was injured on the pool deck, where **fourteen** prior other incidents occurred, as disclosed by Tropicana.[14] Tropicana had undisputed actual knowledge of the dangerous condition and intentionally re-created it Spring 2011, and continued to maintain through the end of the 2011 pool season.

The lack of prior accidents attributable to similar conditions may be considered by a jury as evidence that the landowner or occupier had no notice or knowledge of any dangerous condition in the floor where plaintiff's accident occurred. *Galloway v. McDonalds Restaurants of Nevada, Inc.,* 102 Nev. 534, 537, 728 P.2d 826 (1986). Likewise, prior accidents attributable to similar conditions should be considered by the jury as evidence that Tropicana had notice and knowledge of the dangerous condition on the pool deck that resulted in Plaintiff's accident. The numerous prior accidents, the Gutierrez litigation, and the staff notifications and intermittent repairs negate any argument that Tropicana lacked

---

[13] Exhibit 10, (TURNEY000037 [produced December 3, 2013], TURNEY000059-000060 [produced with Turney's January 12, 2014 supplemental disclosures].

[14] Exhibit 9; Using TROP000044 (a map that was drawn by a Tropicana employee after Mr. Gutierrez's injury) and the Incident Reports produced, each slip and fall is charted where they occurred on the pool deck.

notice of the dangerous condition, and gives rise to a cause of action for gross negligence and a claim for punitive damages. However, the entire picture only became available to Plaintiff recently and after the deadline to amend pleadings had expired.

### 4. Tropicana Was Solely Responsible For The Pool Deck On July 21, 2011.

By way of its' denials to Plaintiff's Requests for Admissions, Tropicana has admitted and removed any factual dispute regarding the following:

- On July 21, 2011, it had exclusive control to monitor the swimming pool area of its premises, and did not delegate the task to anyone other than its employees.

- Tropicana admits that on July 21, 2011, it requested its' employees to remove water from the pool deck.

- Tropicana admits that on July 21, 2011, it requested its' employees to monitor the pool deck area with respect to accumulating water.

- Tropicana admits that before and after Plaintiff slipped and fell on July 21, 2011, it directed its' employees to "clean or remove standing water" from the pool deck.

Further, former lifeguard, Andrea Dial testified, "During the day, they would **'squeegee' the deck so it would not be too slippery.**"[15]

### C. PLAINTIFF SHOULD BE PERMITTED TO AMEND HIS COMPLAINT TO ADD A CAUSE OF ACTION FOR NEGLIGENCE *PER SE*

#### 1. The Pool Deck At Tropicana Was Required To Be Made Of A Slip-Resistant Material.

The 2009 Southern Nevada Pool Code ("Code") provides in pertinent part: "Pools and spas greater than thirty-six (36) inches (914.4 mm) in water depth **shall be provided with a deck made of a slip resistant material** or other alternate materials, as approved by the Building Official. […]." S. Nev. Pool Code (Nev.) ch. 7, § 704.0 (Apr. 23, 2010) [**emphasis added**]. "SLIP RESISTANT**:** A surface that has been so treated or constructed as to significantly reduce the chance of slipping when wet."[16] The deck must have a slip-resistant surface that can be cleaned by hosing and causes no discomfort to bare feet. Nev. Admin. Code 444.134(4) (1988). "Slip resistant" means a finish or

---

[15] Exhibit 11; *Deposition of Andrea Dial*, 56:23-24

[16] S. Nev. Pool Code (Nev.) ch. 2, § 202.0 (Apr. 23, 2010).

1 textured surface designed to prevent or reduce slipping by bare skin in contact with it under wet
2 conditions. Nev. Admin. Code 444.066 (1988). A manufactured product may not be used at a
3 public […] swimming facility […] to provide a slip-resistant finish or surface unless it is intended by
4 the manufacturer to provide resistance to slipping under wet conditions. Nev. Admin. Code 444.135
5 (1988).

### 2. The Pool Deck At Tropicana Was Required To Be Constructed In A Manner Where Water Effectively Drains And Does Not Accumulate.

The 2009 Southern Nevada Pool Code provides the following, in pertinent part: "[...] *Decks shall be sloped to effectively drain to either deck drains* or perimeter areas away from the pool or spa. […]." S. Nev. Pool Code (Nev.) ch. 7, § 704.1 (Apr. 23, 2010). [*emphasis added*]. Nev. Admin. Code 444.134 provides, in pertinent part:

> Drainage must be conducted from the deck in a manner that will not create muddy, *hazardous or objectionable* conditions. Decks must slope on a minimum slope of 1/4 inch per foot (2 percent) to the drains to points *at which the water will have a free, unobstructed flow to points of disposal at all times*.

Nev. Admin. Code 444.134(3) (1988).

All of the evidence shows that this pool deck failed to comply with requirements set forth by law. Tropicana knew of these facts since 2010, but continued to conceal them from Plaintiff until recently when Plaintiff discovered portions of information on his own.

### D. THE UNDISPUTED FACTS WARRANT PLAINTIFF'S REQUEST TO AMEND HIS COMPLAINT TO ADD A CAUSE OF ACTION FOR GROSS NEGLIGENCE

### 3. Tropicana's Decision To Re-Surface Its Pool Deck In 2012 Was Not A "Subsequent Remedial Measure," But "Routine Maintenance" Performed Without Regard To Numerous Injuries Sustained By Guests

The facts are undisputed with respect to the timing of the re-surfacing of the pool deck *after* the 2011 pool season, not *after* Plaintiff fell on July 21, 2011. The facts are undisputed with respect to the **fourteen** injuries that preceded Plaintiff's, and the 2011 re-surfacing using the same materials in place for the first **eight** injuries. The facts are undisputed that Tropicana employed Turned on July 19-20, 2011, to perform an "emergency repair" of a dangerous "slip hazard" on the pool deck.

**REQUEST FOR ADMISSION NO. 26:** ADMIT that Defendant Tropicana Hotel & Casino subsequently altered the walkway in the area where Plaintiff slipped and fell on July 21, 2011 with materials different than those present at the time of Plaintiffs injury.

**RESPONSE TO NO. 26:** Tropicana objects to this request on the grounds it is vague and ambiguous as to the term "Tropicana Hotel & Casino," "altered" and "materials." Tropicana further objects on the grounds it calls for a subsequent remedial measure and therefore is not relevant or reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding the objections, but in light of and subject to them, **Tropicana admits it resurfaced the pool deck with a different deck surface material after the incident as part of usual needed maintenance** and denies as to the remaining allegations.

(Exhibit 3, 000009-000010:25-28, 1-28). "Usual needed maintenance" is not a subsequent remedial measure. Federal Rule of Evidence Rule 407 states:

> When, *after an injury* or harm allegedly caused by an event, *measures are taken that*, if taken previously, *would have made the injury or harm less likely to occur*, evidence of the subsequent measures is *not admissible to prove negligence, culpable conduct*, a defect in a product, a defect in a product's design, *or a need for a warning* or instruction. <u>This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose</u>, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407 [*emphasis added*].

Tropicana admits in responding to Interrogatory No. 11: "[n]o specific acts were taken with regard to plaintiff's incident to change the pool deck surface in the area where the incident occurred. As part of routine annual maintenance, the pool deck was resurfaced after the pool was closed for the 2011 swimming season." *Id.,* at 000020-000021:16-28, 1-2. Tropicana hired Hi-Con in February or March 2012, "to clean up the look and resurface the entire guest area of the pool deck," for "aesthetics." "There were stains on the pool deck. It was discolored." *Deposition of Arik Knowles,* 67-68 (Exhibit 7).

Tropicana cannot have it both ways. Either their position is that any subsequent resurfacing was part of "routine annual maintenance" performed "after the pool was closed for the 2011 swimming season," or that any subsequent resurfacing with different materials was done for the sole purpose of improving "the grade or texture to make the area less slippery" as a result of Plaintiff's injury. Despite the admission that the resurfacing was performed *after* the 2011 pool season and not Plaintiff's injury, the subsequent remedial measure argument is further lost based on Tropicana's

1 extensive knowledge of the unsafe condition, and the "feasibility of precautionary measures," as permitted under Fed. R. Evid. 407. The issue of precaution is highly controverted by Tropicana in this case. They outright deny that the pool deck as it existed on July 21, 2011 represented an unreasonably dangerous condition, despite evidence to the contrary.

The evidence supports a cause of action for gross negligence based on the extensive knowledge and the timing of the events, injuries, and willful choices made by Tropicana. The actual knowledge of the dangerousness of the pool deck, blatant failure to act to correct the condition, and the attempts to conceal these facts from injured persons like Plaintiff, warrants an amendment to seek relief under the above additional negligence-based causes of action, as well as a claim for punitive damages.

Plaintiff has shown that they have acted in good faith to obtain the information necessary to warrant these amendments to his Complaint. The contemporaneously filed motion to compel discovery responses (#48) and requested sanctions for improperly denied admissions (#49) bolster Plaintiff's good faith efforts and highlight the dilatory conduct of Tropicana and its bad faith concealment of information from Plaintiff.

### III.    CONCLUSION

Based on the preceding, an Order should be entered: (1) reopening the deadline to amend pleadings to allow Plaintiff to add a cause of action for Negligence Per Se and Gross Negligence, and a claim of punitive damages against Tropicana; and (2) any further relief as the Court deems just and proper.

DATED: February 13, 2014                    LAW OFFICES OF ARTHUR W. TUVERSON

                                            BY:   /s/ Melanie L. Thomas
                                                  ARTHUR W. TUVERSON, ESQ.
                                                  Nevada State Bar No. 005156
                                                  MELANIE L. THOMAS, ESQ.
                                                  Nevada State Bar No. 012576
                                                  7201 W. Lake Mead Blvd., Suite 570
                                                  Las Vegas, Nevada 89128
                                                  (702) 631-7855
                                                  *Attorneys for Plaintiff*

LAW OFFICES OF ARTHUR W. TUVERSON
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
7201 WEST LAKE MEAD BOULEVARD, SUITE 570
LAS VEGAS, NEVADA 89128
TELEPHONE (702) 631-7855

**CERTIFICATE OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 7201 West Lake Mead, Suite 570, Las Vegas, Nevada 89128. I certify that on this 13 day of February 2014, I served a copy of ***Plaintiff's Motion to File an Amended Complaint*** as follows:

☐ By placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada.

☒ By CM/ECF Filing - with the United States District Court of Nevada, a copy of the Court's notification of e-filing is attached to the hard copy for either faxing, mailing, overnight delivery, and/or hand-delivery.

☐ By Facsimile Transmission - the transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is attached to the hard copy. The names and facsimile numbers of the person(s) served are as set forth below.

☐ By Overnight Delivery by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

☐ By personally delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

| | |
|---|---|
| Brian K. Terry, Esq.<br>Gregory Schulman, Esq.<br>THORNDAL ARMSTRONG DELK<br>BALKENBUSH & EISINGER<br>1100 E. Bridger Avenue<br>Las Vegas, NV 89101<br>*Facsimile (702) 366-0327*<br>Attorney for Tropicana Las Vegas, Inc. | Jenny L. Foley, Esq.<br>Mitchell J. Resnick, Esq.<br>RESNICK & LEWIS<br>6600 W. Charleston Blvd., Suite 117A<br>Las Vegas, NV 89146<br>(702) 997-3800<br>Attorneys for Third-Party Defendant Turney Development, LLC |

Kristopher T. Zeppenfeld, Esq.
KRAVITZ, SCHNITZER, SLOANE & JOHNSON, CHTD.
8985 S. Eastern Avenue, Suite 200
Las Vegas, NV 89123
(702) 362-2203 Fax
Attorneys for Third-Party Defendant Thor Construction, Inc.

_____/s/ Tricia Dorner_____
An employee of the LAW OFFICES OF ARTHUR W. TUVERSON